### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **S-TRAN HOLDINGS, INC.,** *et al.*, Debtors. | Case Nos. 05-11391 (KJC) |
| **S-TRAN HOLDINGS, INC., SERVICE TRANSPORT, INC.** and **DIXIE TRUCKING, INC.,** Plaintiffs v. **PROTECTIVE INSURANCE CO.** Defendant | Adversary Proceeding No. 07-51341 (KJC) |

## <u>MEMORANDUM</u> [1]

### BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

On May 12, 2007, plaintiffs S-Tran Holdings, Inc., Service Transport, Inc., and Dixie Trucking Company, Inc. (the "Debtors") filed a complaint against Protective Insurance Company ("PIC") alleging claims for turnover of property of the estate under Bankruptcy Code §542, violation of the automatic stay of Bankruptcy Code §362, unauthorized post-petition transfers under Bankruptcy Code §549, breach of contract, and breach of fiduciary duty. Before the Court is the Debtor's motion for partial summary judgment (docket nos. 42, 43)(the "Summary Judgment Motion"), in which the Debtors ask the Court to enter judgment in their favor with respect to the claims for (i) turnover of property of the estate, (ii) violation of the automatic stay,

---

[1] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(E), (G) and (O).

and (iii) a return of unauthorized post-petition transfers. PIC filed a response (docket nos. 45, 46) opposing the relief requested in the Summary Judgment Motion, arguing, *inter alia*, that the letter of credit proceeds and the cash deposit at issue are not property of the estate. The Debtors filed a reply (docket no. 49). The Court heard oral argument on the Summary Judgment Motion. For the reasons set forth herein, the Summary Judgment Motion will be granted, in part, and denied, in part.

## BACKGROUND

The Debtors claim that certain facts alleged in this adversary proceeding are undisputed. PIC's response, however, contained a counter-statement of facts. The following facts, taken from the parties' submissions, are largely undisputed and will be considered for the purpose of deciding the Summary Judgment Motion.

PIC issued insurance policies for the benefit of the Debtors, including insurance coverage for (i) workers' compensation claims, (ii) general liability claims, and (iii) cargo compensation claims and liabilities associated with shipments of freight (the "Policies"). In connection with the Policies' issuance, the Debtors and PIC entered into a General Agreement of Indemnity (the "Indemnity Agreement") and a related Collateral Agreement (the "Collateral Agreement") (together, the "Agreements"). Both agreements were dated January 1, 2002. Under the Collateral Agreement, the Debtors provided two forms of collateral to PIC: (i) a $477,000 cash deposit (the "Deposit"), and (ii) letters of credit totaling $3.5 million (the "LOC").

On May 13, 2005 (the "Petition Date"), the Debtors filed chapter 11 bankruptcy petitions in this Court. The Debtors ceased operations on or about the Petition Date.

One week prior to the Petition Date, PIC drew on the LOC and held the proceeds of the

draw (the "LOC Proceeds") as collateral for the Debtor's obligations under the Agreements, along with the Deposit (together, the LOC Proceeds and the Deposit are referred to herein as the "Collateral"). PIC contends that it paid $2,039,494 from the Collateral to third parties after the Petition Date. PIC has held the remaining $1,553,648 of the Collateral in an estimate insurance loss reserve.[2]

The Debtors claim that PIC did not obtain Court approval or the Debtors' consent to use the Collateral. The Debtors demanded the return of the Collateral post-petition, but PIC has not turned over any of the Collateral to the Debtors.[3]

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to

---

[2]In anticipation of an upcoming scheduled status hearing on this matter, the Debtors submitted a status report dated October 1, 2009 (docket no. 68), in which it says:
- 16. At the time the Motion was filed, Protective [PIC] had expended approximately $2.3 million of the Collateral. While the Motion has been pending, Protective has continued to expend the Collateral, and, as of the end of June 2009, had paid approximately $3 million in satisfaction of (a) bodily injury/property damage claims (approximately $80,000), (b) cargo claims (approximately $500,000), (c) workers' compensation claims (approximately $2.2 million), and (d) expenses of Protective (approximately $270,000).
- 16.[sic] As of June 2009, Protective continued to hold approximately $1 million in reserve in connection with the Collateral, including approximately $450,000 in connection with bodily injury/property damage claims, $360,000 in connection with cargo claims, $65,000 in connection with workers' compensation claims, and $150,000 in connection with expenses.
- 17. Upon information and belief, out of that $1 million still held in reserve by Protective from the Collateral, there are very few actual claims asserted against either the Debtors or Protective, the largest of which is a $292,000 cargo claim by Phillips Electronics North America Corporation, filed as a proof of claim in the Chapter 11 Cases but not asserted by suit against Protective.

PIC has not responded to the Debtors' status report and the report is not taken into consideration as part of the record now before me in connection with the disposition of the Summary Judgment Motion.

[3]However, PIC asserted that it returned $516,319.86 to the Debtors by paying that amount to third party claimants at the Debtors' request. PIC does not allege when this occurred. (Affidavit of Craig Morfas, PIC's Vice President of Claims, p. 7) (docket no. 46). *See* Part A(2), *infra.*

3

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056. In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the...court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e), which states, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

Before a court will find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The court must view the facts and draw inferences in a light most favorable to the non-moving

4

party. *Anderson*, 477 U.S. at 255. "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co.*, 24 F.3d 508, 512 (3d Cir. 1994). It is not the role of the judge to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISCUSSION

A.  Is the Collateral property of the estate under §541?

    (1)  Letter of credit proceeds drawn down pre-petition

The law regarding letters of credit in bankruptcy was discussed in detail by my colleague, the Honorable Peter J. Walsh, in the *Oakwood Homes* case:

> A letter of credit comprises three separate contracts. The first generally arises between a buyer and a seller; here, the Debtor purchased insurance policies from the defendants. The second arises between the account party, here the Debtor, and the bank or issuer. . . . Finally the third contract arises between the issuer, . . . , and the beneficiaries of the letter of credit, the defendants.
>
> The relationship between each pair of parties involved in a letter of credit transaction is entirely independent, although each relationship is necessary to support a letter of credit, somewhat like the three legs of a tripod. This rule is predicated on the 'independence principle' which seeks to preserve the viability of letters of credit, whose purpose is to allow the beneficiary to draw on the money before obtaining a judgment. This [independence] insulates the letter of credit from disputes over performance of collateral agreements and allows the letter of credit to function as a swift and certain payment mechanism.
>
> In light of the fact that each of these three relationships is independent, it is 'well-established' that 'a letter of credit and the proceeds therefrom are not property of the debtor's estate. However, the Third Circuit has stated that 'the collateral pledged as a security interest for the letter of credit is [property of the estate]. *[Int'l Fin. Corp. v. Kaiser Group Int'l Inc. (In re Kaiser Group Int'l Inc.)*, 399 F.3d 558, 566 (3d Cir. 2005)(quoting *In re Compton Corp.*, 831 F.2d at 590-91).
>
> Property in which a creditor has a security interest in has long been considered

property of the estate. However, when this concept is coupled with the independence principle, some confusion results. To clarify, the Third Circuit has stated that "where the claim centers around the *collateral* pledged to the bank and *not* the distribution of the proceeds themselves, the 'the fact that letters of credit themselves are not property of the estate is a red herring.'" *Kaiser*, 399 F.3d at 566

*OHC Liquidation Trust v. Discover Re (In re Oakwood Homes Corp.)*, 342 B.R. 59, 67 (Bankr.D.Del. 2006)(citations and internal punctuation omitted; emphasis in original).

The Debtors argue that the independence doctrine does not apply here because PIC drew down on the letters of credit pre-petition. Therefore, as of the Petition Date, PIC held cash - - not letters of credit - - as its collateral under the Collateral Agreement. The Debtors argue that they are not seeking to prevent a draw down or otherwise interfere in the contract between the issuers of the letters of credit and PIC, as beneficiary. Instead, the Debtors argue that, on the Petition Date, PIC held cash as security for the Debtors' obligations under the Indemnity Agreement and Collateral Agreement and that this Collateral is property of the estate. In support of this argument, the Debtors rely, in part, upon the language of Bankruptcy Code §541, which provides that "property of the estate" is defined as "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. §541(a)(1). Section 541(a) "is intended to include any property made available to the estate . . . [even bringing] into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983).

Courts have recognized the "well-established" rule of bankruptcy law that "a letter of credit and the proceeds therefrom are not property of the debtor's estate." *Int'l Finance Corp. v. Kaiser Group Int'l, Inc. (In re Kaiser Group Int'l, Inc.)*, 399 F.3d 558, 566 (3d Cir. 2005)

quoting *Kellogg v. Blue Quail Energy, Inc. (Matter of Compton Corp.)*, 831 F.2d 586, 589 (5th Cir. 1987). *See also Hechinger Investment Co. of Delaware, Inc. v. Allfirst Bank (In re Hechinger Investment Co. of Delaware, Inc.)*, 282 B.R. 149, 161 (Bankr.D.Del. 2002).

In *Kaiser*, the Third Circuit Court of Appeals considered issues regarding the effect of a bankruptcy filing when a debtor has granted a security interest in its property to secure a letter of credit. In *Kaiser*, the debtor was a guarantor of a construction agreement between its subsidiary and a company known as Nova Hut. The subsidiary obtained a letter of credit in favor of Nova Hut and, as guarantor, the debtor pledged $11.1 million in cash as collateral for the letter of credit. After the bankruptcy filing, Nova Hut claimed that the subsidiary had failed a performance test, declared a default under the construction agreement, and drew down the letter of credit. The debtor filed a suit against Nova Hut, claiming that it had wrongfully drawn down the letter of credit and sought damages for the amount of cash pledged as collateral for the letter of credit. The Third Circuit held that the collateral posted by the debtor to secure the letter of credit was property of the estate. *Kaiser*, 399 F.3d at 566. The Third Circuit wrote: "[W]here the claim centers around the *collateral* pledged to the bank and *not* the distribution of the proceeds themselves, 'the fact that letters of credit themselves are not property of the estate is a red herring.'" *Kaiser*, 399 F.3d at 566-67 quoting *In re Mayan Networks*, 306 B.R. 295, 299 (9th Cir. BAP 2004)(emphasis in original). *See also Compton*, in which the Fifth Circuit Court of Appeals wrote:

> It is well established that a letter of credit and the proceeds therefrom are not property of the debtor's estate under 11 U.S.C. §541. When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued. As a result, the bankruptcy trustee is not entitled to enjoin a post petition payment of funds under a letter of credit from the issuer to the

7

beneficiary, because such a payment is not a transfer of debtor's property. *Compton*, 831 F.2d at 589-90 (citations omitted).

When the issuers of the letters of credit paid the LOC Proceeds to PIC, they did not use the Debtors' property, but their own property to make payments to third parties. In contrast to the circumstances in *Kaiser* and *Compton*, the Debtors here do not allege that any of their *own* assets were pledged as collateral for the letters of credit. Because the letter of credit proceeds were not paid with or secured by the Debtors' property, the fact that the proceeds were paid prior to the bankruptcy filing does not transform those entire proceeds into property of the estate.

Judge Walsh recognized this distinction in the *Oakwood Homes* decision. The debtor's insurer in *Oakwood* held a bond and letter of credit to secure the debtor's obligations under a premium loan agreement and indemnity agreement. Post-petition, the insurer in *Oakwood* drew down a $6.5 million surety bond and a $9.5 million balance on a letter of credit. The insurer paid only $1,460,000 to claimants and continued to hold proceeds of $14.5 million. The *Oakwood* debtor brought an adversary proceeding which included a count for turnover under Bankruptcy Code §541 and §542 of the surety bond and letter of credit proceeds. In dismissing this count, Judge Walsh said:

> In this case, however, the plaintiff is seeking turnover of the letter of credit's proceeds - - it is not pursuing the pledged collateral. The plaintiff cannot prevail on this claim because, as stated, the proceeds of a letter of credit are not property of the estate and are, therefore, not recoverable under §542.
> In addition, "[t]urnover under 11 U.S.C. §542 is a remedy available to debtors to obtain what is acknowledged to be property of the bankruptcy estate. . . . It is not a remedy available to recover claimed debts which remain unliquidated and/or in dispute."

*Oakwood Homes*, 342 B.R. at 67 quoting *Hechinger*, 282 B.R. at 161.

The Debtors also rely upon a decision by the Eleventh Circuit Court of Appeals in which

8

the Court decided that the doctrine of independence does not apply once the proceeds of a letter of credit are issued and, therefore, permitted the debtor to bring a turnover proceeding to recover excess letter of credit proceeds, writing:

> Once the proceeds of a letter of credit have been drawn down, the underlying contracts become pertinent in determining which parties have a right to those proceeds. In other words, an irrevocable standby letter of credit *does not nullify the obligations set forth in the underlying contracts.* . . . Rather the letter of credit serves, among other things, to shift the burden of litigation . . . [The] beneficiary of the letter of credit holds the stake during the litigation.

*Two Trees v. Builders Transport, Inc. (In re Builders Transport, Inc.)*, 471 F.3d 1178, 1186 (11th Cir. 2006) quoting *Resolution Trust Corp. v. United Trust Fund, Inc.*, 57 F.3d 1025, 1034-35 (11th Cir. 1995). The *Builders Transport* Court considered which party had the right to the letter of credit proceeds by examining the relevant contract (in that case, a lease) under state law. The Court decided that South Carolina law applies the implied covenant of good faith and fair dealing in every contract and, absent a provision to the contrary, the letter of credit beneficiary (or, in this case its assignee) had a duty to return to the debtor any excess proceeds drawn down from the letter of credit that were not used to secure the debtor's obligations. *Builders Transport*, 471 F.3d at 1187. *See also Litzler v. Chamblee & Ryan, P.C. (In re TIC United Corp.)*, 2008 WL 2437868, *6 (Bankr.N.D.Tex. June 17, 2008)("[T]o the extent a letter of credit is drawn down in an amount in excess of that which the beneficiary of the letter of credit is legally entitled to receive, case law permits the recovery of those *wrongfully* drawn funds from the beneficiary for the benefit of the estate." (Emphasis in original)); *Phar-Mor, Inc. v. Florida Self-Insurers Guaranty Assoc., Inc. (In re Phar-Mor, Inc.)*, 344 B.R. 852, 856 (Bankr.N.D.Ohio 2005)(Court denied a motion to dismiss a complaint seeking an accounting and turnover of excess letter of

credit proceeds, deciding that "proceeds from a letter of credit in excess of the amount needed to satisfy Debtor's obligation are part of the bankruptcy estate because such proceeds must be returned to the estate."). Thus, the Debtors may have a claim for *excess* LOC Proceeds (the "Excess LOC Proceeds"), which would become part of the Debtors' estate. However, for the reasons stated by Judge Walsh in *Oakwood Homes* and *Hechinger*, the Debtors may not obtain those excess proceeds through a §542 turnover action before the amount of the claim is liquidated. *Oakwood Homes,* 342 B.R. at 67 quoting *Hechinger*, 282 B.R. at 161.

I am unable to determine, on this record, whether or how much of the LOC Proceeds have been disbursed (or disbursed properly), or may be reserved to pay potential future claims.

(2)   Cash deposit

The Debtors also argue that the $477,000 Deposit, given to PIC as security for the Debtors' obligations under the Indemnity Agreement, is property of the estate. A cash deposit in which a debtor continues to have a legal interest and a residual equitable interest is property of the estate. *Canzone v. Hammon (In re Hammon)*, 180 B.R. 220, 223 (9th Cir. BAP 1995). *See also Oakwood Homes*, 342 B.R. at 67 ("Property in which a creditor has a security interest in has long been considered property of the estate.")(citations omitted).

In its counter-statement of facts, PIC claims that it already returned $516,319.86 (the "Returned Amount") from the Collateral to the Debtors by paying, at the demand of the Debtors, third party claimants who asserted cargo claims against the Debtors. (See PIC Response, docket no. 45, Counterstatement of Facts, ¶18). I am unable to determine, on this record, when such sums may have been returned to the Debtors or whether the Returned Amount is from the LOC Proceeds or the Deposit.

B.  **Did PIC violate the automatic stay of §362 by using the Collateral to pay claims post-petition?**

Because the Deposit and any Excess LOC Proceeds are property of the estate, PIC may have violated the automatic stay if it used the either the Deposit or Exceed LOC Proceeds without seeking relief under Bankruptcy Code §362(d). Until the record is more fully developed so that a determination can be made about the issues discussed in Parts A(1) and (2), *supra.*, I cannot make any further determination.

C.  **Did PIC violate §549 by paying workers compensation claims without authorization post-petition?**

Section 549 permits a trustee to avoid a transfer of property of the estate that occurs after the commencement of the case. Because there are issues of material fact regarding the amount of Excess LOC Proceeds and PIC's disposition of the LOC Proceeds and the Deposit, the Debtors' request for summary judgment on the §549 claims will be denied.

## CONCLUSION

The LOC Proceeds paid to PIC prior to the bankruptcy filing are not property of the estate, except to the extent that there are any Excess LOC Proceeds to which PIC is not entitled under the terms of the Collateral Agreement and Indemnity Agreement. The Deposit is property of the estate under Bankruptcy Code §541.

An appropriate order follows.

BY THE COURT:

*(signature)*

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: October 5, 2009